NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2423

———————

BRIAN E. CONSTANTINE,

Appellant

v.

NEW JERSEY DEPARTMENT OF BANKING AND INSURANCE;
NEW JERSEY REAL ESTATE COMMISSION; MARLENE CARIDE;
EUGENE K. BONILLA; CHRISTINA BANASIAK; DARLENE BANDAZIAN;
JACOB ELKES; WILLIAM J. HANLEY; CARLOS LEJNIEKES;
JOHN DOE 1-10; JANE DOE 1-10; DENISE ILLES

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-22-cv-02678)
District Judge: Honorable Christine P. O'Hearn

———————

Submitted Under Third Circuit LAR 34.1(a)
May 3, 2024

Before: KRAUSE, CHUNG, and AMBRO, <u>Circuit Judges</u>

(Opinion filed: May 6, 2024)

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

Brian Constantine, who suffers from schizoaffective disorder, filed suit against the New Jersey Department of Banking and Insurance ("DOBI"), the New Jersey Real Estate Commission ("REC"), and individual defendants within those organizations (REC members Christina Banasiak, Darlene Bandazian, Eugenia Bonilla,[1] Jacob Elkes, William Hanley, Denise Illes, and Carlos Lejnieks as well as former DOBI Commissioner Marlene Caride). He alleges being wrongfully denied a real estate salesperson license on the basis of his mental illness because the REC initially denied his application for failing to demonstrate good moral character in light of prior convictions, at least one of which was attributable to his mental illness. Constantine now has his license, but before he obtained it, he filed this lawsuit, bringing claims under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131 *et seq.*; 42 U.S.C. § 1983; 42 U.S.C. § 12203[2] (the ADA's anti-retaliation provision); and various state constitutional and statutory provisions. The District Court dismissed all of his claims. We affirm for the reasons that follow.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Eugenia Bonilla is misidentified as "Eugene" in the caption.

[2] Constantine incorrectly cites 42 U.S.C. § 12202 in his operative complaint, as the District Court noted.

# I.

New Jersey law requires that real estate salespeople be licensed. N.J. Stat. § 45:15-1. This licensing is entrusted to the REC. *Id.* §§ 45:15-5, :15-9. License applicants must consent to a criminal history background check. *Id.* § 45:15-9(a). They must also supply evidence of good moral character, and the REC "may make such investigation and require such proof as it deems proper and in the public interest as to the honesty, trustworthiness, character and integrity of an applicant." *Id.* Initial denials of license applications are issued by the REC and may be appealed to its eight-member board ("REC Board"). *See id.* § 45:15-5; N.J. Admin. Code § 11:5–11.10(a).

As noted, Constantine suffers from schizoaffective disorder, a combination of a thought disorder characterized by paranoid delusions and a mood disorder. In 1996, he killed another person while suffering from paranoid delusions but was acquitted as being not guilty by reason of insanity. He was thereafter committed to a psychiatric hospital for evaluation and treatment. His schizoaffective disorder is incurable but is manageable through medication and certain health practices.

In addition to the murder charge for which he was civilly committed, Constantine was convicted of assault in 1988; arrested and charged for trespassing in 1989, the final disposition of which is unclear; and charged for possession of a weapon in violation of state law in 1992, which was dismissed after a pre-trial intervention program.

Constantine applied to the REC for a real estate license on August 22, 2018. It issued an initial denial of his application on October 4, 2018. The denial letter stated that Constantine's "prior convictions . . . caused the staff to conclude that [he] failed" to

3

establish his "good moral character, honesty, trustworthiness and integrity to qualify for licensure." App. 44.

He appealed the denial to the REC Board. It transmitted the matter for a hearing before and determination by an administrative law judge ("ALJ"). *See* N.J. Stat. §§ 52:14B-2, :14B-9, :14F-6. The ALJ issued an initial decision on September 14, 2021, reversing the denial of Constantine's real estate license and concluding he sufficiently demonstrated his good moral character. *See id.* § 52:14B-10(c). In doing so, the ALJ considered the 1996 murder charge but did not develop facts concerning the other convictions. That initial decision would become final if the REC did not adopt, modify, or reject it within 45 days (without an extension). *See id.* Eugenia Bonilla, acting as President of the REC, sought an extension, and the deadline was extended to May 16, 2022. Bonilla then moved for another extension until June 30, 2022, but it is unclear from Constantine's allegations or the record if this was granted.

On May 10, 2022, the REC Board remanded the case to the ALJ to consider and develop the record concerning Constantine's other convictions, stating he "has other criminal history that was not sufficiently considered." App. 67. On remand, the ALJ issued another decision recommending reversal of the REC's initial denial. Following an extension, the REC Board did not adopt or modify the order, so it became final. N.J. Stat. § 52:14B-10(c). With that decision in place, Constantine could obtain his real estate license, and his application was approved on October 12, 2023.

Nonetheless, while the administrative proceedings were ongoing and before receiving his license, Constantine filed suit in the District of New Jersey on May 6, 2022.

4

The defendants moved to dismiss per Federal Rules of Civil Procedure 12(b)(1) and/or 12(b)(6).  The District Court dismissed all claims, concluding they were barred by Eleventh Amendment sovereign immunity or quasi-judicial immunity.  It also determined that Constantine had failed to plead specific allegations as to the personal involvement of the individual defendants to support his Section 1983 claim against them.  After the Court dismissed the federal claims, it declined to exercise supplemental jurisdiction over the state law claims, dismissing them without prejudice.  Constantine moved for reconsideration, which the Court denied.  He appeals.[3]

## II.

## Title II of the ADA

The District Court dismissed Constantine's Title II ADA claim against the DOBI and REC as barred by sovereign immunity.  We affirm, but for different reasons than those adopted by the District Court.

The Eleventh Amendment to the U.S. Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  It protects

---

[3] Setting aside the dispute over sovereign immunity, which implicates subject matter jurisdiction, *see Treasurer of N.J. v. U.S. Dep't of Treasury*, 684 F.3d 382, 395-96 (3d Cir. 2012), the District Court had jurisdiction under 28 U.S.C. § 1331.  We have jurisdiction under 28 U.S.C. § 1291.  We review *de novo* a district court's dismissal for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *Solis v. Loc. 234, Transp. Workers Union*, 585 F.3d 172, 176 (3d Cir. 2009).  Our standard of review for dismissals under Rule 12(b)(6) is the same. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

states from suit by private parties in federal court. *In re Venoco LLC*, 998 F.3d 94, 101 (3d Cir. 2021); *Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 551 F.3d 193, 197 (3d Cir. 2008). That protection also extends to suits brought against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). Furthermore, as relevant here, Eleventh Amendment sovereign immunity shields subunits of the state, *i.e.*, state agencies and state officers sued in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *MCI Telecomm. Corp. v. Bell Atl. Pa.*, 271 F.3d 491, 503 (3d Cir. 2001).

But Eleventh Amendment sovereign immunity is not absolute; it is limited by three exceptions: (1) congressional abrogation; (2) state waiver; and (3) suits against individual state officers for prospective relief to end an ongoing violation of federal law. *MCI Telecomm. Corp.*, 271 F.3d at 503. Only the first exception is at issue here.[4]

To determine if Congress has abrogated a state's Eleventh Amendment immunity for a particular claim, we ask whether it "unequivocally expressed its intent" to do so and whether it "acted pursuant to a valid grant of constitutional authority." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004) (citation omitted). Congress has clearly done the former with respect to Title II ADA claims. *See id.* at 518; 42 U.S.C. § 12202. For the latter, we ask:

---

[4] New Jersey has not waived its sovereign immunity for ADA Title II or Section 1983 claims. *See Allen v. N.J. State Police*, 974 F.3d 497, 502, 505 (3d Cir. 2020) (Section 1983); *Durham v. Kelley*, 82 F.4th 217, 227 (3d Cir. 2023) (ADA). Constantine does not seek injunctive relief against the individual defendants and, now that he has obtained his real estate license, does not seek injunctive relief against any defendant.

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006). Under the first step, we must determine whether Constantine has stated a viable claim under Title II of the ADA. *See id.*; *see also Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 273 (3d Cir. 2020).[5] He has not.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. There is no dispute that the DOBI and REC are "public entit[ies]" under Title II. *See id.* § 12131(1). To state a viable Title II claim, plaintiffs must allege facts plausibly showing: "(1) they are qualified individuals; (2) with a disability; and (3) they were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or were subjected to discrimination by any such entity; (4) by reason of their disability." *Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023). Because Constantine seeks compensatory damages, he must also adequately allege intentional discrimination, which requires a showing of deliberate indifference. *Id.*

---

[5] In doing so, we take his complaint's allegations as true given that this is a facial attack on subject matter jurisdiction under Rule 12(b)(1). *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006).

7

At the least, Constantine has failed to do the last of these. He does not allege facts supporting that the DOBI or REC engaged in intentional discrimination amounting to deliberate indifference. He therefore has not stated a viable claim under Title II, meaning that "the State's alleged conduct [does not] violate[] Title II," *Georgia*, 546 U.S. at 159, and Congress has not validly abrogated sovereign immunity as to his claim. We affirm the dismissal of his Title II claim on this alternative reasoning.

## 42 U.S.C. § 1983

Constantine also brings claims against all defendants pursuant to 42 U.S.C. § 1983, alleging they deprived him of constitutional due process and equal protection under the Fourteenth Amendment to the U.S. Constitution.[6]

The DOBI and REC are not subject to suit under Section 1983 because, as state agencies, they are not "person[s]" under that cause of action. *Will*, 491 U.S. at 71; 42 U.S.C. § 1983. They are also protected by sovereign immunity. *See Will*, 491 U.S. at 63,

---

[6] In his operative complaint, Constantine also alleges violations of due process under the Fifth Amendment. He appears to have abandoned this claim (referring only to the Fourteenth Amendment in his briefing), but, in any case, it does not apply here because none of the defendants is a federal actor. *See B & G Const. Co. v. Dir., Off. of Workers' Comp. Programs,* 662 F.3d 233, 246 n.14 (3d Cir. 2011).

Also pursuant to his Section 1983 claim, Constantine alleges violations of the New Jersey Constitution, art. I, ¶ I; the New Jersey Law Against Discrimination, N.J. Stat. 10:5-1 *et seq.*; and Title II of the ADA. Section 1983 "by its terms . . . provides a remedy for violations of federal, not state or local, law." *McMullen v. Maple Shade Twp.*, 643 F.3d 96, 99 (3d Cir. 2011). And plaintiffs cannot seek damages under Section 1983 for violations of the ADA. *Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 297-300 (3d Cir. 2017) (concluding that the ADA provides a comprehensive remedial scheme and, accordingly, "ADA statutory rights cannot be vindicated through § 1983").

66, 71; *Quern v. Jordan*, 440 U.S. 332, 340-45 (1979) (holding that Congress did not abrogate sovereign immunity through Section 1983). We thus affirm the District Court's dismissal of Constantine's Section 1983 claim against them.

As for the individual defendants, sued solely in their individual capacities,[7] the District Court concluded that Constantine failed to plead sufficient allegations as to their personal involvement in the alleged wrongs. It separately concluded that the REC defendants were entitled to quasi-judicial immunity in any case.

We agree that Constantine has failed to allege sufficiently the personal involvement of Marlene Caride, the one non-REC defendant. He includes no allegations concerning her personal involvement. Dismissal is proper on this ground.

As for the REC defendants, Constantine alleges broadly that each voted to deny him a real estate license and specifically that Eugenia Bonilla requested extensions to consider the ALJ's recommended decision.[8] Even assuming these bare allegations are sufficient to support each REC defendant's personal involvement, *see Chavarriaga v.*

---

[7] While Constantine's pleadings repeatedly state he is suing the individual defendants in their individual capacities, he has muddied the distinction by also stating therein that he is suing the individuals in their "individual capacity for actions taken in [their] official capacity[.]" App. 76-77. Nonetheless, he disclaims any official-capacity suit in his briefing. *See* Opening Br. at 38 ("[T]he individual defendants *are not* being sued in their official capacities. They are being sued in their individual capacities[.]").

To the extent, if any, that he attempts to sue the individual defendants in their official capacities under Section 1983, sovereign immunity would protect them as arms of the State. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 71 (1989); *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

[8] Constantine alleges that Bonilla, "acting in her capacity as President of the [REC], moved for" two extensions in order for the REC Board to consider the ALJ's recommended decision. App. 78-79. Again, he attempts to conflate individual- and official-capacity claims.

*N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015), those defendants are nonetheless entitled to quasi-judicial immunity. It protects a "range of judicial actors," including those who make judgments "functionally comparable" to judges. *Russell v. Richardson*, 905 F.3d 239, 247 (3d Cir. 2018) (internal quotations omitted and cleaned up). We employ a "'functional' approach" in determining whether a government actor performs a quasi-judicial role. *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 224 (1988)).

The factors outlined by the Supreme Court in *Butz v. Economou*, 438 U.S. 478 (1978), and listed in *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985), typically tell us whether an official enjoys quasi-judicial immunity. *Keystone Redevelopment Partners, LLC v. Decker*, 631 F.3d 89, 95 (3d Cir. 2011). These include:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.* (quoting *Cleavinger*, 474 U.S. at 202).

We agree with the REC defendants that, on balance, these factors support their entitlement to quasi-judicial immunity. REC Board members "are subject to a risk of harassment and intimidation from dissatisfied parties"; parties can appeal REC decisions, and errors are correctable on appeal; REC members may only be removed for cause; and REC licensing determinations are adversarial in nature. Answering Br. at 39-42. Constantine makes no persuasive argument otherwise. *See* Opening Br. at 31 ("None of the staff members of the [REC] . . . 'walked, talked, or acted like a judge' in their denial

10

of [Constantine's] license or afterward.").

In sum, we agree with the District Court that Constantine's Section 1983 claim against the individual defendants in their personal capacities must be dismissed. But while the Court dismissed those claims under Federal Rule of Civil Procedure 12(b)(1) (or was unclear regarding its ground for dismissal), dismissals for failure to state a claim and on the basis of quasi-judicial immunity are done pursuant to Rule 12(b)(6). *See, e.g.*, *Capogrosso v. Supreme Ct. of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009); *Keystone Redevelopment Partners*, 631 F.3d at 94, 101; *see also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (West 2024) ("The defense of qualified or judicial immunity has also been held to be properly raised via Rule 12(b)(6) rather than Rule 12(b)(1), although one can find courts not being too particular about the distinction.").

Accordingly, we affirm dismissal of the Section 1983 claim against the individual defendants under Rule 12(b)(6). *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 157 (3d Cir. 2022) (stating we may affirm on any basis supported by the record).

### 42 U.S.C. § 12203

Constantine claims that the individual defendants remanded his case to the ALJ for further consideration of his criminal history in retaliation for filing this lawsuit, in violation of 42 U.S.C. § 12203, the anti-retaliation provision under the ADA.

The District Court considered the ADA retaliation claim alongside the Title II claim and, as a result, concluded that it too was barred by sovereign immunity. This approach assumes that Constantine sued the individuals in their official capacities. On *de*

11

*novo* review, we understand the complaint to state only individual-capacity claims, as discussed above. *See supra* note 7 and accompanying text.

Regardless, Constantine has failed to allege plausibly an ADA retaliation claim against any of the individual defendants—in any capacity.[9] To plead a case of retaliation under the ADA, he must sufficiently allege that he engaged in protected conduct, faced an adverse action, and that there was a causal link between the protected conduct and adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). We treat retaliation claims under the ADA as subject to the same framework as Title VII retaliation claims. *Id.*

Assuming he engaged in protected conduct, Constantine has nonetheless failed to

---

[9] There is a preliminary issue not addressed at length by the parties: whether Constantine can sue the individual defendants in their personal capacities for damages under Section 12203 for conduct protected by Title II. We have apparently not addressed whether the ADA's anti-retaliation provision provides for individual liability. We have noted, however, that "other courts of appeals [have held] that individuals are not liable under Titles I and II of the ADA, which prohibit discrimination by employers and public entities respectively." *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (citing *Garcia v. S.U.N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001); *Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999)); *see also Datto v. Harrison*, 664 F. Supp. 2d 472, 486, 487 (E.D. Pa. 2009) ("Whether the ADA imposes liability upon individuals for claims of retaliation is an issue that has divided the federal courts.").

Courts of appeals have reached different outcomes regarding whether ADA retaliation claims can be brought against individuals for damages. *Compare Shotz v. City of Plantation*, 344 F.3d 1161, 1166-80 (11th Cir. 2003) (concluding individuals may be sued in their personal capacity for violating Section 12203 for conduct alleged to violate Title II of the ADA), *with Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) (concluding the ADA does not permit an action against individuals for retaliation for conduct protected by the ADA where underlying claim arose under Title II), *and Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) (concluding that Section 12203 does not provide for individual liability). We take no position on the issue here but instead assume that Section 12203 permits individual liability for retaliation claims predicated on conduct ostensibly protected by Title II.

allege an adverse action. He alleges that he was delayed in obtaining his real estate license because the REC Board remanded his application to the ALJ for further fact-finding regarding his criminal history. He argues that the remand was done in retaliation for filing this lawsuit, which, in his view, is supported by the fact that it occurred within a week after he filed suit.

We are not persuaded there is an adverse action here, which generally must be material enough to have dissuaded a reasonable person from engaging in the protected conduct. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (discussing this standard in the context of Title VII). The REC Board's decision merely to remand his application to the ALJ for further consideration does not, without more, pass muster under this standard.

Accordingly, Constantine has failed to state a claim against the individual defendants for retaliation under Section 12203. We affirm the dismissal of that claim, albeit under Rule 12(b)(6).[10]

\* \* \*

We thus affirm the dismissal of each claim brought by Constantine.

---

[10] Having determined that Constantine's federal claims were rightly dismissed, we conclude the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over his state constitutional and statutory claims. *See Talley v. Wetzel*, 15 F.4th 275, 288 n.8 (3d Cir. 2021); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

We also conclude that the Court did not abuse its discretion in denying his motion for reconsideration. *See Long v. Atl. City Police Dep't*, 670 F.3d 436, 446 (3d Cir. 2012).